Good morning. My name is Derek Tallarico. I represent the appellant, Svenhard's Swedish Bakery, and I intend to reserve two minutes in rebuttal. May it please the Court. I'd like to begin by addressing the two cases the panel directed us to. The first is In re Aslan, which has two relevant holdings. As to the standard of review, this Court ruled that determinations regarding the conclusions of law, which we reviewed de novo. The appellant would have the panel Counsel, you're very soft-spoken, and I think I might be getting old here. Could you speak louder, please? Absolutely. Thank you. The appellant would have the panel conclude that eight years later, Helms overturned Aslan and took the remarkable position that application of the legal standard for the non-executory nature of a contract is a matter of fact. It did not, and it is not. The facts are not in dispute in this case. What's at issue is the application of the law to those facts on a de novo standard. The main takeaway from Aslan is that sequenced performance does not equate to a contract being non-executory. This squares with this Court's ruling at Helms, which focuses on the outstanding nature of performance obligations at the petition date. Performance does not have to be due to be performed at the moment of bankruptcy in order to be outstanding. In Aslan, the debtor-seller had an obligation to provide documents, and the non-debtor-buyer had an obligation to tender a purchase payment. The obligation to purchase was not yet due until the documents had been provided. Roberts. Counsel, you know, and I know you want to get onto this part of the argument, but I guess I'm wondering on the financial accommodation part of the statute. Section 365 says that you can assume a contract to extend a financial accommodation for the benefit of the debtor. So here, you were owed a pension. The pension fund was owed some $40 million. They signed an agreement where now it's $3 million. Why isn't that a financial accommodation? I'd point the Court to its decision in Sunrunner Marine in 1991, where the Court determined that, consistent with legislative history, a financial accommodation refers to the extension of new money. The only case... Well, here, weren't they essentially giving them $35 million? No, Your Honor, I don't believe so. There was a dispute as to what was... What was the dispute? There was no dispute. There was a determination which was sent to Sven Hartz, and they didn't contest it. So what was the dispute? The process of what led to the settlement agreement. I'm sorry? There was a two-year settlement negotiation that occurred that led to the settlement agreement, which demonstrates that there was an issue as to what was owed and what should and could be paid. And was it anywhere near the difference between $3 million and $40 million? Was there any argument in the world? It seems obvious that what was happening here, and according to the record, was there was an inquiry into Sven Hartz's financial situation, and the pension fund was ultimately persuaded that there was no way they were going to be able to pay anything like the amount that they actually owed, and that's how they came up with the $3 million. There was no dispute of any significance as to the amount of money. Well, I think Sven Hartz did dispute it, whether or not that was the strength of that dispute. Where in the record does it show that there was any dispute as to the amount of money that was that they owed? Well, the issues that were argued at the claim itself. I know, but I'm asking where in the record is there any indication that Sven Hartz ever disputed that they owed, I mean, $35, $36, or $37 million, millions and millions of dollars in the 30s? Other than the fact that they agreed to settle that, no, there is nothing else. And so how is it not a financial accommodation at that point? Because it's not an extension. It's not an extension of credit. What the Bankruptcy Code seeks to limit is requiring a third party to come out of pocket to extend credit to a debtor in a circumstance where that debtor may be in a different financial position than they were And that's exactly what happened here, because the pension fund has a responsibility tied to that money. And so they are out of pocket in the sense that they are going to have to pay benefits based on money they don't have. But it's a claim. What do you mean it's a claim? It's a claim that the pension fund has to Sven Hartz, a claim for Sven Hartz to pay them money. Correct. And they gave them their financial accommodation of asking for much less money because they were persuaded, exactly as you said, that Sven Hartz couldn't pay it. So they gave them an accommodation. It's like a workhouse agreement. And that's why I point the Court to Sunrunner Marine, which focuses In Sunrunner, I think I'm looking at the passage you're talking about, and it says that there was an extension of money or credit there, but it doesn't say that that's necessary. It seems like it's sufficient, but where does it say that that's necessary to be a financial accommodation? I think it points out that this is a case-by-case determination, and I believe Sunrunner does stand for the principle that the extension of money is the granting, the giving of funds. Well, this is a debt restructuring. You referred to it as a settlement, but it's a debt restructuring. It is, in fact, a financial accommodation, isn't it? We don't believe so. No, we don't believe so. I mean, is Sunrunner your only case? Because as I read Sunrunner, it says that there was an extension of money or credit, and they think that's a financial accommodation. But I don't read anywhere where it says that's the only way something could be a financial accommodation, unless you can point me to something that I'm missing here. I'll review if there's additional cases for rebuttal. Great. Let's hear from the other side then. Good morning, and may it please the Court. I'm Joshua Shiffrin here on behalf of the Pension Fund. The Bankruptcy Court ruled in favor of the Pension Fund on three independent grounds, and the BAP affirmed on two of those grounds, and we submit that none of those grounds are due for reversal here today. To start with the subject that the panel was touching upon on the financial accommodation piece, I'll note that the statute is disjunctive. It says under Section 365C2, a contract that is a loan or debt refinance or debt financing or financial accommodation for the benefit of the debtor cannot be assumed. How would you describe, if we were to write an opinion in this, as to what constitutes a financial accommodation, just some description of it? I think that the description can be found in the Ninth Circuit's case, SAB, and also within the description of what the congressional intent behind the exception is, which is that it's an exchange for a promise to pay money over time made based on considerations of the financial circumstances of the debtor, and there's a recognition in making that contract that if those circumstances were to change, that that extension of credit or that financial arrangement should not be assumed. It should not be assumable, I should say. I don't know if that's a helpful definition or not, but I think that those are the essential elements of it. Is that it? And I think the essential element— If those circumstances should change, meaning if they file for bankruptcy. Is that what you mean? Yes, that's right. If they file for bankruptcy. And that, looking at the case law, looking at the TS Industries case and the Boutique case— Because the whole point of this was to get paid, even if a lot less than what you got. That's right. I mean, this was an arrangement entered into by the Federal Reserve. But if it's assumed, then you are supposedly getting what you did agree to, so you are getting paid a lot less than what you agreed to, but what you were due, but you're getting paid. Well, those circumstances have dramatically changed, and they're written into the recitals of the agreement that the pension fund agreed to accept $3 million in lieu of $39 million because it thought that at the time it was making the best of a bad situation. This was what it was going to be able to receive from an entity that said it was going to remain in business. Lo and behold, it turns out in bankruptcy that this entity actually has a successor that is a deep pocket. And the settlement agreement is a ploy to— That's kind of fortuitous to the description of what's financial accommodation, right? I mean, that's the facts of this case. But in terms of what makes it a financial accommodation and why the bankruptcy would matter— Yes. It is fortuitous in this case, and it is unusual that I think that the posture of this motion to assume is coming to the court because the debtors not wanting to take advantage of the financing of the pension fund but rather to— To get off on a slightly different question, what—as I understand it, the settlement—there's another agreement, which is the agreement between Sven Hards and the successor, MSB, is that what it's called? USB.  And at least at that juncture—I think it was at that juncture—USB said, but we won't take the assignment unless the agreement is declared valid.  And the bankruptcy court said, I'm not going to declare it valid, and that hasn't been argued today, but it seems to be consistent with our case law. So why isn't that the end of the story? It could well be the end of the story. I think that there's three grounds that the bankruptcy court found, any one of which could well be the end of the story for the settlement agreement. But that was sort of an afterthought, as I understand it, in the bankruptcy. Well, I'm not going to do it, but he didn't say because I'm not going to do it, the other two issues don't matter anymore. Correct. I think that any of those grounds are sufficient reasons why the bankruptcy court would not approve the settlement agreement between USB and Sven Hards. But I understand that question is out of the case. I don't believe that it is out of the case. As to whether to agree, whether to approve that agreement. I thought that issue was dropped.  Correct. That's not before you. The ultimate question of whether or not the USB settlement agreement should be approved is not before you. But there were three grounds upon which the, with respect to the motion to assume that the bankruptcy court found that it was not going to grant the relief sought by Sven Hards. One was the issue of executory contract. Another was the financial arrangement. And the third was that in the context of a summary proceeding under 365, the court could not determine the validity of the agreement. I understand that, but I didn't understand that the district, that the bankruptcy court said, and therefore, there is no assignment that's going to happen here, and therefore, the whole arrangement collapses. The whole question of whether there should be an assumption assignment doesn't matter anymore. I don't think they said that.  And I agree with that. The court didn't say those words. But it's important to you. But I'm asking you. It doesn't matter anymore. Yes, it does, because USB and Sven Hards have made it clear that they have no interest in this settlement, in this issue, unless the they can get that declaration from the court that this is a valid and subsisting contract. Otherwise, they've said that this issue is moot, and they're not pursuing it. So we believe it is. What issue is moot? Whether or not the contract, excuse me, whether or not the agreement should be approved or assumed. Apologize. Whether or not the agreement should be assumed will be moot unless it is. Do you think if we agree that this is not the place to decide the validity. All right. One last question. What's going on with all the Oregon litigation? Currently, that case is set for trial before Judge Simon in November. The parties have filed cross motions for summary judgment. Your case. Yes. The other one has been. The Sven Hards, you're right, you're right, there's several pieces of litigation, one of which is the pension fund versus USB, in which we have alleged claims for, under ERISA, under theory of successor liability, under resilient floor. And in that case, USB has raised the existence of the agreement that's brought us here today as a defense. That case is set for trial in November. There's a case brought by Sven Hards against USB, and that case has been stayed pending the outcome of this appeal. So that case, the Oregon case involving you, is going to decide the validity of the  That's correct, Your Honor. In that case, very much so. The pension, the USB has raised that agreement in response. The pension fund has raised some questions and prepared to put on evidence regarding the validity of the agreement. But you're not telling us to wait for that. I don't think that you need to wait. I don't think that issue is necessary to be determined in order to determine this appeal. I don't think that the really the question before you is, on that point, is whether or not under 365 a question about the validity of the agreement can be determined on a summary proceeding. And the Court's been very clear that it can't. But it does seem pertinent to the question that I was asking you, because if, for example, it is determined in that litigation that the agreement is valid, that then, in other words, it wouldn't seem very wise for us to turn this case on the failure of this Court to determine whether the agreement is valid, because some courts could decide whether the agreement is valid. I think that's right. And we're not asking you to declare that the agreement is valid or invalid. No, but you were, as I understand it, agreeing with my posit that because USB's participation in this at all turned on whether or not the agreement, there was a declaration that the agreement was valid, that that was a third basis on which we can simply say, no, never mind about the other two issues. But that doesn't seem particularly wise, given dependency of this other case. I will agree that that issue is perhaps murkier because of the other case. I think that there is a way through it, which is that it's just not a question that should be answered in the context of the motion before you one way or the other. But I understand. But if we only said that, that wouldn't help things very much, right? It would be better for us to decide one of the other two issues? I would agree with that. Okay. And if we say that the first issue is the executoriness, we don't need to decide that either if we agree with you on the financial accommodation. That's correct, Your Honor. And is that what you would recommend that we do? Decide the second issue if we list them as one, two, three? Yeah, I think that makes a lot of sense, Your Honor. Yeah. Thank you. Unless there are other questions, I'll step down. Thank you. Thank you. Thank you. To pick up on the financial accommodation issue, I think it's relevant and important to recognize that this is not an extension of credit in any way, not directly or otherwise. But where does the statute say that it has to be an extension of credit? It says it has to be a financial accommodation. It doesn't say it has to be an extension of credit. Correct. But I think the point and the key here is that there's a debt that's already owed, and this is a settlement on that debt. But it's a settlement purely as a financial accommodation. I mean, in ordinary English, i.e., because you can't afford to pay it. That was, I believe, the motivating factor for why the pension fund settled as it did. As far as Svenhardt's motivations, I think we're getting off of and looking behind what was the reasons for the settlement. And it was a settlement on a debt that was owed to be paid over time. And the case law, and if you look back to the report by the committee and the judiciary, the purpose of not allowing financial accommodations to be required is to prevent new advances of credit. We had a debt here that was already owed. There was no new advance to be made. And that is what the statute's designed to guard against. And did you find anything that said that's the only thing the statute has designed? We realize that that's sufficient, but what about this question about whether it's necessary? It's, I believe, just inherent from the statute itself and the committee report. Even though the statute says or, do you have a response to your opposing counsel's quotation? Easby, Sunriver, TS Industries, all of those cases identify that what that means is the extension of new credit. With a final minute, I'd just like to invite putting forth that the implications of this case here extend far beyond and have potential to significantly upset the balance of the debtor-creditor relationship in bankruptcy. For decades, parties have understood that outstanding obligations, whether due at the moment of filing or only upon a sequence of performance, made a contract executory. I think we might, if we were to agree with you about that, I personally find those arguments persuasive, but I'm stuck on the other issue because you can't win just on that first issue, right? You have to win on the second issue also. I think it is telling and informative that there has been no case to find that that — Well, hold on, counsel. The answer to your question is yes, you have to win on the second issue, right? We do have to win on that issue. Yes, we do. What about this question I was raising about whether the failing — if we agree that in this proceeding the validity of the settlement agreement with the pension fund can't be reviewed and won't be reviewed, does that blow up the U.S.B. Svenhardt agreement to assume and assign such that the case goes away for that reason? No, Your Honor, for two reasons. One, I think the financial accommodation and executoriness can still be decided separate apart from that. I think as the Court — Well, I understand they can be. I'm asking you if there isn't going to be any assignment, if there is no declaration as to the validity of the agreement, then why are we deciding anything about it? Two things. One, that provision can be waived by U.S. Bakeries, and that issue, as the Court And this settlement does not have to hinge on that. That will be decided in the other court, and U.S. Bakeries can waive that element of their settlement agreement, and that can be put forth to the lower courts. And just as a final point on the financial accommodation, the Boudiette case, which was argued extensively, is different from our case because that's a workout agreement on a debtor-creditor, a lender-borrower relationship. This is not a lender-borrower relationship. This is a claim, and that is significant in a difference to whether or not this fits into a financial accommodation or not. Well, I don't understand that. If somebody owes money on a debt, doesn't the bank come in and make a claim? You owe me money? So that's a claim. So how does that distinguish anything? Because it is a claim and not a requirement to extend money as a financial accommodation. I don't understand what you say, but it's a claim. But the loan is also a claim. The debt on a loan is also a claim, and the notion that it can't be assumed is in the statute. So I don't understand why the fact that that's a claim has to do with anything. Because it's the direction of the obligation. The financial accommodation being the accommodation of paying and extending money to a distressed debtor versus the accommodation of restructuring and dealing with a claim already owed by the debtor. And this is back to your argument that there has to be an extension of new money.  Thank you. We've taken you over your time. Thank you both sides for the argument. This case is submitted.
judges: BERZON, FRIEDLAND, MENDOZA